<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>    v.<br><br>MARQUI BENTON,<br><br>      Defendant. | Crim. Action No. 19-701 (MAS)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant Marqui Benton's ("Benton") Motion for a Partial Modification of Sentence. (ECF No. 121.) The Government did not oppose. The Court has carefully considered Benton's Motion and decides the matter without oral argument under Local Civil Rule 78.1, which applies to criminal cases through Local Criminal Rule 1.1. For the reasons below, the Court denies Benton's Motion.

**I.  BACKGROUND**

On November 4, 2020, Benton pled guilty to four counts of a nine-count indictment: (1) Possession with Intent to Distribute Cocaine (Count 6); (2) Possession with Intent to Distribute Heroin (Count 7); (3) Possession of a Firearm by a Convicted Felon (Count 8); and (4) Possession of a Firearm in furtherance of a Drug Trafficking Crime (Count 9). (Def.'s Moving Br. 1-2, ECF No. 121.) On March 10, 2021, Benton was sentenced to an aggregate term of 120 months of imprisonment—60 months on Counts 6, 7, and 8 to run concurrently, and 60 months on Count 9

to run consecutively with Counts 6, 7, and 8.[1] (*Id.* at 2.) Following Benton's sentencing, he was committed to the Bureau of Prisons ("BOP") and designated to the Federal Correctional Institution ("FCI") at Fort Dix. (*Id.*) Benton's projected release date is January 1, 2028, with home detention eligibility as early as July 7, 2027. (*Id.*)

Benton submits that Fort Dix maintains facilities that leave inmates particularly vulnerable to Covid-19. (*Id.* at 9.) In so asserting, Benton maintains that Fort Dix houses upwards of 3,000 inmates in a 3-story, "retrofitted former Army barracks." (*Id.*) According to Benton, "300-plus" inmates are "double stacked" on bunks in mainly 12-man "open bay rooms." (*Id.*) "[E]ach of the three floors has a mass communal latrine," and the Fort Dix buildings have "no air conditioning" with the only means for ventilation coming by way of ceiling fans and disproportionately sized windows. (*Id.* (emphasis omitted).)

Moreover, Benton asserts that prison staff come and go from Fort Dix, which presents a means for Covid-19 to infiltrate the prison. (*Id.* at 10.) As a result of the above lack of ventilation, close proximity between inmates, and comings and goings of prison staff, Benton submits that "Fort Dix has remained under strict quarantine" since March 2020. (*Id.*) Benton maintains that this quarantine has functionally resulted in "30 months and counting of virtual 24/7 confinement," during which Benton has allegedly only been permitted "one hour sessions of outdoor recreation two to three times a week . . . until someone tests positive[,] at which point[,] there [is] zero recreation [offered prisoners] along with no going outside." (*Id.*)

---

[1] Benton was also sentenced to 24 months to be served concurrently with the 120-month imprisonment term in this matter due to a revocation of supervised release in a different criminal matter. (Def.'s Moving Br. 2.)

2

On these facts and the above asserted prison conditions, Benton moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) citing "the unforeseeably severe conditions of confinement attribute[ed] to the pandemic." (*Id.* at 15.)

## II.   LEGAL STANDARD

A district court generally has limited authority to modify a federally-imposed sentence once it commences. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010). Section 3582(c)(1)(A), however, permits district courts to grant compassionate release where "extraordinary and compelling reasons" support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part, that:

> (A)   the court, upon motion of the Director of the [BOP] or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)   extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c). As such, under § 3582(c)(1)(A), a district court may grant a compassionate release motion "if the court finds that the sentence reduction is[:] (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a)[.]" *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)). District courts are not bound "by the Commission's policy statement" for

3

defendant-filed compassionate release motions. *Id.* at 259. But the policy statement provides guidance, as it lists examples of medical conditions that may qualify as extraordinary and compelling reasons. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A)(i) (U.S. Sent'g Comm'n 2021) (reflecting that the standard is met if a defendant has a terminal illness, serious medical condition, or deteriorating health).

### III.   DISCUSSION

Benton moves for compassionate release on the basis that the prison he is housed in leaves inmates uniquely vulnerable to Covid-19 and that Covid-19 poses a unique threat to federal prisoners. (*See generally* Def.'s Moving Br.) This argument is not unique. *See, e.g.*, *United States v. Dorsey*, No. 19-314, 2023 WL 5277865, at *2 (D.N.J. Aug. 16, 2023) (providing an example where this Court similarly considered a prisoner's argument that his federal prison's unique Covid-19 vulnerability justified compassionate release). Generally, Covid-19's existence in the prison system does not justify compassionate release or a sentence reduction in and of itself. *United States v. Roeder*, 807 F. App'x 157, 160 n.16 (3d Cir. 2020) (finding, at the height of the pre-vaccination Covid-19 pandemic, that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit"). Nevertheless, the Court considers the viability of a partial sentence reduction based on the unique facts and arguments Benton presents pertaining to Fort Dix.

To start, § 3582(c) does not define what constitutes "extraordinary and compelling reasons" that might justify a sentence reduction or release. As such, courts routinely look to the Sentencing Commission's policy statement governing sentence reductions. *United States v. Moe*, 571 F. Supp. 3d 267, 270 (D.N.J. 2021). Although the policy statement is not binding, it serves as a guide to

help decipher the "extraordinary and compelling" language within the statute. *Andrews*, 12 F.4th at 260 ("[A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons."). Under that policy statement, a defendant can qualify for a sentence reduction due to "extraordinary and compelling reasons" if he presents the following circumstances:

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); *and*

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S. Sent'g Guidelines Manual § 1B1.13 (b)(1)(D) (U.S. Sent'g Comm'n 2023) (emphasis added).

Under the above outlined criteria, Benton has not shown an "extraordinary and compelling" reason for a sentence reduction. As to the first factor, Benton admits that there are no confirmed cases of Covid-19 at Fort Dix, and the Court notes that as of May 11, 2023, Covid-19 is no longer an "ongoing public health emergency."[2] (*See* Def.'s Moving Br. 14.) On this basis alone, Benton does not meet the criteria for a reduced sentence under the Guidelines.

Under the second factor, Benton has not provided any reason for the Court to believe that he is uniquely susceptible to a Covid-19 infection. (*See generally* Def.'s Moving Br.) In fact,

---

[2] U.S. DEP'T OF HEALTH & HUM. SERVS., HHS SECRETARY XAVIER BECERRA STATEMENT ON END OF THE COVID-19 PUBLIC HEALTH EMERGENCY (MAY 11, 2023, https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html.

Benton admits that he is without any unique risk factors when it comes to a Covid-19 infection. (*See* Def.'s Moving Br. 13 ("To be sure . . . absence of pre-existing health conditions combined with an age of only thirty-seven surely exempt[s] Benton from imminent risk of death and/or hospitalization[.]").) As such, under both the Guidelines' first and second criteria, Benton's unique circumstances fail to establish "extraordinary and compelling" reasons justifying a possible sentence reduction.

Notwithstanding this conclusion, even if the Court were to consider Benton's contentions outside of the Guidelines, there is no reasonable basis to grant Benton's Motion. The Court finds it significant that Benton admits that "the conditions [he] faces [at Fort Dix] are presently experienced by most . . . all inmates currently imprisoned." (*Id.* at 7-8.) This contention alone seems to largely forclose any possibility that Benton's circumstances can be considered "extraordinary." To be clear, the core of Benton's contention is essentially that Fort Dix's poor ventilation, close proximity between inmates, and the prison staff's comings and goings present the possibility that Benton *may* contract Covid-19 multiple times which *may* lead to long-term effects. (*Id.* at 10-14.) Importantly, these contentions rest almost entirely on the speculative conclusion that Benton may contract Covid-19 and experience long-term effects. Perhaps even more importantly, even if the Court were to accept the inherent speculation in Benton's argument, the variables that Benton identify which may lead to contracting Covid-19 are present in essentially every prison in the United States—all prisons have prison staff that go home at the end of the day, and all prisons maintain facilities that require the confinement of individuals for long periods of time with little ability for prisoners to distance from one another.

In sum, if the Court were to credit Benton's argument and find his circumstances "extraordinary and compelling," the Court would functionally have to find that every federal

prisoner at Fort Dix—and potentially every federal prisoner in the country—qualifies for a sentence reduction merely because Covid-19 exists and they *may* become infected. The Court is not willing to make such a finding. As Benton does not otherwise cite to persuasive authority to support a finding that the existence of Covid-19 is an "extraordinary and compelling" reason for this Court to grant a sentence reduction, the Court need not proceed any further in its analysis.

### IV.    CONCLUSION

For the reasons outlined above, Benton's Motion is denied. Benton may file another motion for a sentence reduction if his circumstances materially change.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE